UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 23-cr-41 (TSC) |
| | ) | |
| VICTOR SIMMS | ) | |
| _____ | ) | |

**DEFENDANT'S SECOND SUPPLEMENT TO HIS SENTENCING**

**MEMORANDUM**

Victor Simms, by and through his counsel, submits the following supplement to his Sentencing Memorandum.

Counsel writes to address and clarify the recent history of Mr. Simms' case – specifically, the period of time between Mr. Simms' acceptance of the plea offer to present day. Counsel writes because the Court and the victims' family appear to have the misimpression that Mr. Simms is engaging in bad faith manipulation of court dates and creating undue delay.

I.   **The postponements**

**The delay of the plea colloquy**

To begin, Mr. Simms appeared in Court on May 14, 2024, in order to accept a plea offer of 35 years to life in prison. Mr. Simms had expressed, when he signed the paperwork, that entering the plea would be contingent on speaking to his father. His father had visited Mr. Simms every Friday.

However, on that Friday, Mr. Simms' father was unable to visit. Mr. Simms relayed to counsel that he wanted to speak to his father before entering into a plea that would likely end in a virtual life sentence, even under the best case scenario. He could not go forward with the plea colloquy without speaking to his father. When counsel spoke to Mr. Simms two days later, Mr. Simms agreed to accept the plea offer. The government added two years to the bottom number of the range after Mr. Simms requested additional time before entering the plea and Mr. Simms entered the plea to 37 years to life on May 20, 2024.

### *The sentencing hearing delay*

On December 19, 2024, the defense filed a Consent Motion to Continue Mr. Simms' Sentencing Hearing. ECF No. 118. At the time, Mr. Simms' father had been scheduled to have a surgical procedure to address a brain aneurysm. Counsel spoke to Mr. Simms' father who confirmed the procedure was scheduled for January 9th, the same day as Mr. Simms' sentencing.

On January 9, 2025, there was a significant snowfall and the surgery was postponed. About two weeks later, the surgery was conducted but complications led to a massive stroke that left Mr. Simms' father on life support.

Through Mr. Simms' father's wife, counsel learned on Friday, January 31st that the family had decided to take Mr. Simms' father off of life support on February 3, 2025.

Around that time, counsel had one conversation with Mr. Simms that was short because Mr. Simms broke down with emotion. Counsel still needed to review

materials with Mr. Simms and thus asked for a brief continuance on February 1, 2025. ECF No. 122. That continuance was requested to allow counsel to properly prepare for submission of Mr. Simms' sentencing materials.

### *The video motion*

The filing of this Motion, ECF No. 121, and the resulting inconvenience to the Court was counsel's fault. Counsel, having learned on a Friday that the family had planned to remove Mr. Simms' father from life support the subsequent Monday, acted rashly. Counsel did not believe they had time to visit Mr. Simms prior to filing a Motion for Monday (particularly on a Friday where CTF has limited visitation for people who are not cooperating with the government). Counsel assumed that Mr. Simms would want to visit his father. When that motion was denied, counsel made a second judgment call – that Mr. Simms would want to at least say goodbye to his father by video. Counsel was grateful when the Court made significant efforts to grant the defense request.

Mr. Simms *did* want to say goodbye to his father but what counsel did not know is that Mr. Simms had learned that could do so through a tablet provided by the DOC. Thus, when Mr. Simms arrived at the courthouse, he asked to be returned immediately. He was able to see his father by tablet later that day from his cell.

Mr. Simms' father passed away on the night of February 10, 2025. His funeral is scheduled for February 26, 2025. Mr. Simms is grateful to the Court for

its grace, even though he did not ultimately use the opportunity to see his father from court.

Mr. Simms' relationship with his father is exceptionally complicated and largely tragic. Since Mr. Simms' father's death, he only began to speak about the details of that relationship. Mr. Simms' actions and counsel's requests over the past three months may seem to have an ulterior motive, but counsel can assure the Court that Mr. Simms has been overwhelmed. His emotional state has been exceptionally unstable since the unexpected loss of his father, particularly with the timing of his death as Mr. Simms faces a life sentence. In addition, Mr. Simms' mother has been in the hospital for the past week. Mr. Simms' requests over the past few months have not been motivated by some unstated desire to delay the case or manipulate the Court. It is because, even notwithstanding this case, the circumstances of his life over the past month have been extremely and objectively painful.

## II. The Court should sentence Mr. Simms to 37 years so that his senior care can be accomplished at a Correctional Institute and not a Penitentiary.

Mr. Simms will be designated to a facility by the Bureau of Prisons based upon a number of personal factors. Because of the nature of this offense and because of the lengthy sentence he will serve, he will initially be committed to a maximum security U.S. Penitentiary. But in about twelve years (at the age of 67), he would be eligible for transfer if he were to be given a numbered sentence. By BOP guidelines, he would be eligible for transfer to a medium security prison when he has less than 25 years remaining on his sentence, assuming good time credit.

But if the Court imposes a life sentence, no transfer would be possible – he will be required to serve his elder years in a maximum security penitentiary.

For all of the reasons stated in the various defense submissions, the defense requests that the Court give Mr. Simms a 37 year sentence because such a sentence is sufficient but no greater than necessary to serve the goals of 18 U.S.C. § 3553.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
DIANE SHREWSBURY
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500